## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGELINA KHARCHENKO,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 2:22-CV-01421-CMR** |
| | : | |
| **WT RAND TRANSPORT, LLC and** | : | **ELECTRONICALLY FILED** |
| **WT RAND LOGISTICS, LLC,** | : | |
| | : | |
| **Defendants.** | : | |

## FELLERMAN & CIARIMBOLI LAW, P.C.'S OPPOSITION TO BOCHETTO & LENTZ, P.C.'S MOTION TO INTERVENE AND <u>FOR RECONSIDERATION OF STIPULATED ORDER</u>

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503

Attorneys for Intervenor,
Fellerman & Ciarimboli Law, PC

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ........................................................................................................ 7

    A.    Bochetto & Lentz Is Not an Escrow Agent But, If It Were, the Stipulated Order Controls Disposition of the Escrowed Funds ........... 7

    B.    Bochetto & Lentz Has No Interest in the Deposited Funds Necessary for Intervention ...................................................................................... 9

    C.    F&C's Charging Lien Has Priority and Is Properly Satisfied Out of the Deposited Funds......................................................................... 12

CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*Almi, Inc. v. Dick Corp.*, 375 A.2d 1343 (Pa. Cmwlth. 1977)................................. 14

*Ambeliotis v. Ambeliotis*, No. 229 WDA 2016, 2016 WL 5842167
    (Pa. Super. Aug. 31, 2016)..................................................................... 14

*American Universal Ins. Grp. v. Nutbrown*, No. 87-5674, 1988 WL 50359
    (E.D. Pa. May 16, 1988)......................................................................... 11

*Appeal of Harris*, 186 A. 92 (Pa. 1936) ..................................................... 13

*Brody v. Spang*, 957 F.2d 1108 (3d Cir. 1992) .......................................... 11

*Conn v. Gabbert*, 526 U.S. 286 (1999)...................................................... 11

*In re Dolly Madison Indus., Inc.*, 351 F. Supp. 1038 (E.D. Pa. 1972),
    *aff'd*, 480 F.2d 917 (3d Cir. 1973)........................................................ 7

*Harris v. Pernsley*, 820 F.2d 592 (3d Cir. 1987) ...................................... 10

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005) .................... 10

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361
    (3d Cir. 1995)........................................................................................ 10

*Patten v. Wilson*, 34 Pa. 298 (Pa. 1859) ................................................... 14

*Ries v. National R.R. Passenger Corp.*, No. 89-51, 1993 WL 131490
    (E.D. Pa. Apr. 27, 1993) ....................................................................... 13

*Samango v. Pileggi*, 526 A.2d 417 (Pa. Super. 1987) ............................... 8

*Shenango Sys. Sols., Inc. v. Micros-Systems, Inc.*, 887 A.2d 772 (Pa. Super.
    2005)............................................................................................... 14, 15

*Simmet v. Graeber*, 145 A. 528 (Pa. 1929) ............................................... 7

*Struck v. Binns*, No. 94-4835, 1995 WL 57481 (E.D. Pa. Feb. 10, 1995)................. 7

*United States v. Commonwealth of Pa., Dep't of Highways*, 349 F. Supp. 1370
(E.D. Pa. 1972) ............................................................................................... 13

*Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433 (2017) ........................ 10

*United States v. Territory of Virgin Islands*, 748 F.3d 514 (3d Cir. 2014).............. 10

**RULES**

Fed. R. Civ. P. 24(a) ................................................................................................ 9

Fed. R. Civ. P. 24(a)(1) ........................................................................................... 9

Fed. R. Civ. P. 24(a)(2) ........................................................................................... 9

Fed. R. Civ. P. 24(b) .............................................................................................. 11

Fed. R. Civ. P. 24(b)(1)(A) ..................................................................................... 9

Fed. R. Civ. P. 24(b)(1)(B) .................................................................................... 11

Pa. R. Prof. Conduct 1.15(f) ................................................................................... 8

**INTRODUCTION**

By Order dated September 25, 2023 (ECF 43), this Court recognized Fellerman & Ciarimboli Law, P.C.'s ("F&C") charging lien against any recovery by Plaintiff Angelina Kharchenko by virtue of the legal services that F&C provided to Ms. Kharchenko before she transitioned her representation to Michael J. O'Neill, Esquire. Both Ms. Kharchenko and Mr. O'Neill agree that F&C is owed $80,000 from the settlement proceeds for its services. They further agree that those funds were deposited in an escrow account in the name of Bochetto & Lentz, P.C. for the specific purpose of satisfying F&C's charging lien. On the basis of these admissions, the Court entered the Stipulated Order on April 30, 2024 (ECF 49) directing that the $80,000 in the Bochetto & Lentz account shall be distributed to F&C to satisfy its lien.

Two days after the payment deadline passed, Bochetto & Lentz moved to intervene and for reconsideration of the Stipulated Order based on its argument that the escrowed funds should instead be distributed to its client, Thrivest Legal Funding, LLC ("Thrivest"), which is a creditor of Mr. O'Neill. Bochetto & Lentz's motion is both legally and factually flawed. Mr. O'Neill had no interest in the escrowed funds capable of being attached by his creditor. And Bochetto & Lentz has no interest in the funds necessary for intervention. Further, and dispositively,

F&C's charging lien has priority over any other claim that may be made to the settlement funds.

The escrowed funds should be distributed to F&C forthwith as directed in the Stipulated Order.

## **FACTUAL BACKGROUND**

F&C represented Ms. Kharchenko in this personal injury action from September 2021 through February 2023 when Ms. Kharchenko ended her relationship with F&C and selected Mr. O'Neill as successor counsel. *See* F&C's Motion for Leave To Intervene For Limited Purpose of Asserting Charging Lien Against Proceeds of Settlement or Judgment in Favor of Plaintiff (hereinafter "Charging Lien Motion") ¶¶ 2, 9 (ECF 28).[1]  Pursuant to the Contingent Fee Agreement which Ms. Kharchenko signed on September 23, 2021, upon termination of the representation, F&C was entitled to receive 40% of "the last good faith offer of settlement" received by Ms. Kharchenko, together with reimbursement of costs and expenses advanced by F&C on her behalf. *Id.* ¶¶ 3, 4.[2]

---

[1]  The Charging Lien Motion is attached as Exhibit A to the Declaration of Daniel T. Brier ("Brier Decl.") which is Exhibit 1 to this opposition brief.

[2]  To protect the confidentiality of settlement discussions, details concerning the settlement offer are not included in this public filing.

On March 2, 2023, F&C moved for leave to intervene in this action to assert its charging lien. ECF 28. There was no opposition to the motion which was granted by Order dated September 25, 2023. ECF 43.

On October 9, 2023, Mr. O'Neill advised the undersigned counsel for F&C that Ms. Kharchenko settled her claims in this matter. *See* Brier Decl. ¶ 5 & Ex. C. Mr. O'Neill confirmed that F&C "maintains a lien" against the settlement and asked F&C to verify the total amount owed. *Id.* Mr. O'Neill wrote in relevant part:

> This correspondence is to conform that your client maintains a lien in the following amounts:
>
> 1. $20,835.78 for costs; and
>
> 2. $80.000 for fees pursuant to the fee agreement with Ms. Kharchenko less 20% ($16,000) referral/rainmaker fee.
>
> The total due to F&C in the above matter is $84,838.78. Please confirm and this will be paid as soon as possible.

*Id.*

F&C disputed Mr. O'Neill's calculation, particularly his claim to a "referral/rainmaker fee." *Id.* ¶ 6 & Ex. C. Counsel for F&C asked Mr. O'Neill for additional information concerning the settlement and also that he confirm that the entire attorneys' fee was placed in an escrow account pending resolution of F&C's charging lien. *Id.*

3

Following an additional exchange of emails, Mr. O'Neill wrote to the Court on October 11, 2023 to ask for a telephone conference to address the dispute over the amount of the charging lien. *Id.* ¶ 7 & Ex. D. In his letter, Mr. O'Neill, both for himself and for Ms. Kharchenko, acknowledged that F&C had an $80,000 fee interest in the settlement proceeds and was entitled to be reimbursed for outstanding costs. *Id.*

Following an additional exchange of letters and a telephone conference with the Honorable Lynne A. Sitarski on October 19, 2023, the fee dispute was referred to the Honorable Carol Sandra Moore Wells for a settlement conference November 30, 2023. *Id.* ¶ 8. The fee dispute was not resolved at the conference. *Id.* ¶ 9. Mr. O'Neill did not disclose prior to or during the settlement conference that he had placed *Kharchenko* settlement funds that were admittedly subject to F&C's charging lien in an escrow account at Bochetto & Lentz. *Id.* ¶ 10.

On December 15, 2023, Mr. O'Neill was deposed in connection with litigation pending in the Court of Common Pleas of Luzerne County arising out of Mr. O'Neill's separation from F&C. *Id.* ¶ 11. During the deposition, Mr. O'Neill disclosed for the first time that he had deposited part of the *Kharchenko* settlement funds into an escrow account at Bochetto & Lentz, P.C. to protect F&C's fee interest. At no time prior to the deposition did Bochetto & Lentz notify F&C or its counsel that it was holding any funds from the *Kharchenko* settlement. *Id.*

Following the deposition, the undersigned counsel placed a call to Gavin

Lentz, Esquire of Bochetto & Lentz to verify whether Kharchenko settlement funds

had been placed in its escrow account. *Id.* ¶ 12. Mr. Lentz confirmed that his firm

was holding *Kharchenko* settlement funds in its escrow account. *Id.*

In March 2024, Mr. O'Neill and F&C resolved their outstanding disputes

through a series of settlement discussions conducted by the Honorable Karoline

Mehalchick of the U.S. District Court for the Middle District of Pennsylvania. *Id.* ¶

13. In furtherance of the settlement, Mr. O'Neill reaffirmed, this time in a letter to

Judge Mehalchick, that he has no interest in the funds in the Bochetto & Lentz

escrow account and instead those funds belong to F&C. *Id.* ¶ 14 & Ex. E. He wrote:

> I write to confirm that I do not have any interest in
> or claim to the $80,000.00 in funds placed in the escrow
> account of Bochetto & Lentz, P.C. as a result of the
> settlement of the Kharchenko case.
>
> By way of background, Fellerman & Ciaramboli
> Law, P.C. ("F&C") represented Angelina Kharchenko
> from September 2021 to February 2023 pursuant to a
> Contingent Fee Agreement dated September 23, 2021 (a
> copy is attached). Ms Kharchenko discharged F&C as her
> counsel in February 2023. I alone represented Ms.
> Kharchenko after February 2023.
>
> Prior to Ms. Kharchenko's termination of her
> relationship with F&C, F&C received an offer to settle Ms.
> Kharchenko's claim for $[]. Under the terms of the
> Contingent Fee Agreement that Ms. Kharchenko signed,
> F&C is entitled to []% of the $[] offer, or $80,000.00, to
> be paid out of any recovery she received. F&C is also
> entitled to $20,835.78 out of Ms. Kharchenko's recovery

as reimbursement for costs advanced by F&C. ***Ms. Kharchenko and I do not dispute these amounts are owed to F&C out of the escrowed funds to satisfy her obligations under the Contingent Fee Agreement.***

*Id.* (emphasis added).

Pursuant to this acknowledgement, the undersigned counsel wrote to the Court on April 11, 2024 to report that a settlement was reached and to request a telephone conference to discuss distribution of the $80,000 deposited in the Bochetto & Lentz escrow account. *Id.* ¶ 15 & Ex. F. Prior to the conference, F&C and Mr. O'Neill, both for himself and on behalf of Ms. Kharchenko, agreed to the language in the Stipulated Order. *Id.* ¶ 16. The settlement terms were presented to Judge Wells at the conference on April 30, 2024 and the Court thereafter entered the Stipulated Order dated April 30, 2024. *Id.* ¶¶ 16-17 & Ex. G. Consistent with the settlement terms agreed to with the assistance of Judge Mehalchick, Mr. O'Neill, both for himself and as counsel for Ms. Kharchenko stipulated and agreed that F&C "is entitled to the $80,000.00 on deposit in the Bochetto & Lentz, P.C. escrow account to satisfy the charging lien recognized by Order dated September 25, 2023." *See* Stipulated Order at p.2. Mr. O'Neill and F&C further stipulated, and the Court Ordered, that "[t]he settlement funds totaling $80,000.00 deposited in the Bochetto & Lentz, P.C. escrow account are ***the sole and exclusive property*** of Fellerman & Ciarimboli Law, P.C. and shall be distributed to Fellerman & Ciarimboli Law, P.C.

6

to satisfy its lien in the above-captioned matter within seven days of the date of this Stipulated Order." *Id.* (emphasis added).

The undersigned counsel for F&C served the Stipulated Order on Bochetto & Lentz on May 1, 2024. *See* Brier Decl. ¶ 18 & Ex. H.  Bochetto & Lentz failed to deliver the deposited funds by May 7, 2024 as directed in the Stipulated Order. *Id.* ¶ 19.  Bochetto & Lentz filed the instant motion on May 9, 2024 seeking leave to intervene and requesting reconsideration of the Stipulated Order.

## ARGUMENT

### A.   Bochetto & Lentz Is Not an Escrow Agent But, If It Were, the Stipulated Order Controls Disposition of the Escrowed Funds.

Bochetto & Lentz claims an interest in the Kharchenko settlement funds as an "escrow agent," ECF 51-2 at 5, but this is not accurate.  Bochetto & Lentz did not take possession of the funds as an "escrow agent," but, assuming it did, the Stipulated Order still controls disposition of the funds.

An escrow arrangement exists where parties reach an agreement with an escrow agent to hold property until the performance of a specific condition or the happening of a specific event. *See Struck v. Binns*, No. 94-4835, 1995 WL 57481, at *3 (E.D. Pa. Feb. 10, 1995); *Simmet v. Graeber*, 145 A. 528, 529 (Pa. 1929).  An escrow agent is considered to be the agent of both parties and its powers are limited to those stipulated by the parties in the escrow agreement. *See Struck*, 1995 WL 57481 at *3; *In re Dolly Madison Indus., Inc.*, 351 F. Supp. 1038, 1042 (E.D. Pa.

1972) ("Prior to the happening of any of the conditions upon which the escrow agreement operates, the escrow agent is not empowered to act for either party."), *aff'd*, 480 F.2d 917 (3d Cir. 1973); *Samango v. Pileggi*, 526 A.2d 417, 421 (Pa. Super. 1987) ("The depository under an escrow agreement is generally considered to be the agent of both parties, and the agent's authority must be strictly construed.").

Here, Bochetto & Lentz is not a neutral third party, cannot claim to have acted pursuant to an escrow agreement with F&C, and does not claim to be an agent for Mr. O'Neill or F&C. It is not an escrow agent.[3]  And, if Bochetto & Lentz were an escrow agent, the Stipulated Order is nonetheless dispositive with respect to disposition of the deposited funds.  The documents appended as Exhibit 4 to Mr. Lentz's Certification (ECF 51-7) demonstrate that Mr. Lentz agreed that the funds would be held in his firm's escrow account until "the court has authorized the distribution." *See* October 16, 2023 email at 10:48 am; *see also* October 16, 2023 email at 11:02 am ("I will hold it in our IOLTA account until the court releases it."). Consistent with the express understanding under which Bochetto & Lentz took

---

[3]  Bochetto & Lentz appears to have held the funds in trust in its IOLTA account pursuant to Rule 1.15(f) of the Pennsylvania Rules of Professoinal Conduct which directs that, "[w]hen in possession of funds or property in which two or more persons, one of whom may be the lawyer, claim an interest, the funds or property shall be kept separate by the lawyer until the dispute is resolved." Pa. R. Prof. Conduct 1.15(f).  This does not make Bochetto & Lentz an escrow agent and does not alter F&C's priority as the holder of a charging lien.

possession of the funds, the Stipulated Order controls and requires distribution of those funds to F&C.

**B.**    **Bochetto & Lentz Has No Interest in the Deposited Funds Necessary for Intervention.**

As evidenced by Bochetto & Lentz's commitment to Mr. O'Neill that it would "hold [the funds] in our IOLTA account until the court releases it," ECF 51-7, it has no interest in the deposited funds and therefore is not entitled to intervene either as of right or by permission.

Rule 24(a) of the Federal Rules of Civil Procedure provides that a person may intervene as of right where he or she "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).[4] A potential intervenor as of right must satisfy four criteria to succeed on a motion to intervene: (1) the application for intervention must be timely, (2) the applicant must have a sufficient interest in the litigation, (3) the interest must be affected or impaired as a practical matter by the disposition of the action, and (4) the interest must not be adequately represented by an existing party in the litigation.

---

[4]    Rule 24 also permits a party to intervene as of right or by permission where a federal statute allows intervention. Fed. R. Civ. P. 24(a)(1), (b)(1)(A). Bochetto & Lentz does not claim a right to intervene under any statute and therefore this alternative basis for intervention has no application here.

*United States v. Territory of Virgin Islands*, 748 F.3d 514, 519 (3d Cir. 2014).  The interest claimed by the proposed intervenor must be a "legally cognizable interest" that is "significantly protectable" and must belong to or be owned by the movant. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220-21 (3d Cir. 2005) (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)).  In addition, to intervene as of right, a proposed intervenor must have Article III standing.  *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017) ("[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing.").

Bochetto & Lentz falls far short of the required showing for intervention as of right.  It does not and cannot claim any interest in the *Kharchenko* settlement or the deposited funds.  Whatever interest Bochetto & Lentz claims is wholly derivate of its client, Thrivest, and any potential interest claimed by Thrivest vanished upon Mr. O'Neill's admission that the escrowed funds are not his, but rather the funds belong to F&C.  Because Bochetto & Lentz has no legally cognizable interest in the deposited funds, it has no right to intervene.  *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987) ("[T]he applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene.").  And, because Bochetto & Lentz's only involvement is as counsel for Thrivest and lawyers do not have standing to assert their client's claimed rights, Bochetto & Lentz lacks standing to

intervene. *Conn v. Gabbert*, 526 U.S. 286, 292-93 (1999) (holding that lawyer "clearly had no standing to raise the alleged infringement of the rights of his client").

Bochetto & Lentz also fails the test for permissive invention. Rule 24(b) allows for permissive intervention if the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Bochetto & Lentz has not asserted any claim or defense on its own behalf, let alone any claim or defense that shares questions of law or fact with any claim before the Court. There is no basis for permissive intervention. *Brody v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992) ("[I]f intervention as of right is not available, the same [lack of interest] would indicate that it would not be an abuse of discretion to deny permissive intervention as well.").

In addition, Bochetto & Lentz's motion to intervene is untimely. The firm was on notice of F&C's fee interest in the settlement proceeds since at least October 16, 2023, as evidenced by Mr. Lentz's email exchanges with Mr. O'Neill on that date referencing the fee dispute. ECF 51-7 Bochetto & Lentz did not move to intervene until more than six months later. This was too late. *See, e.g., American Universal Ins. Grp. v. Nutbrown*, No. 87-5674, 1988 WL 50359, at *2 (E.D. Pa. May 16, 1988) (intervention denied where movant waited six months before filing motion).

While F&C agrees that the most sensible and practical procedure would be for this Court to resolve any dispute concerning the settlement funds in this proceeding, Bochetto & Lentz cannot meet the test for intervention as of right or permissive intervention. Its motion to intervene should be denied.

**C.     F&C's Charging Lien Has Priority and Is Properly Satisfied Out of the Deposited Funds.**

Bochetto & Lentz claims that its client, Thrivest, has a superior interest in the deposited funds because the funds are attorney's fees paid to Mr. O'Neill and because Thrivest has a judgment against Mr. O'Neill. ECF 51-2 at 1-2, 5. This argument misstates the facts and misapprehends the nature of a charging lien.

Contrary to Bochetto & Lentz's unsupported assertions, the *Kharchenko* settlement funds placed in the Bochetto & Lentz escrow account were not fees earned by Mr. O'Neill. Instead, the *Kharchenko* settlement funds were at all relevant times subject to F&C's charging lien. *See* ECF 43 at n.1 ("[T]he Court grants F & C's motion and permits it to intervene for the limited purpose of asserting a charging lien at the appropriate time."). Mr. Lentz acknowledged that there was a dispute over the fee and agreed to hold the funds until "the court has authorized the distribution." ECF 51-7 at p.1. Mr. O'Neill, both for himself and on behalf of Ms. Kharchenko, subsequently denied any interest in the deposited funds and acknowledged and agreed that the funds belong to F&C. ECF 49 at 2. Because the

deposited funds do not—and never did—belong to Mr. O'Neill and do not represent payment of his fee, the central premise of Bochetto & Lentz's motion is incorrect.

Further, in claiming priority for its client's confessed judgment entered on or about June 2, 2023, ECF 51-2, Bochetto & Lentz misapprehends the legal effect of a charging lien. In Pennsylvania, a lawyer is entitled to be paid out of a fund which resulted from his or her skill and labor. *Appeal of Harris*, 186 A. 92, 97 (Pa. 1936). As the Pennsylvania Supreme Court explained, "[i]t would be manifestly unjust to permit [a creditor] to reap all the benefits of the attorney's endeavors and to 'get out from under' even the smallest share of the burden which produced the benefits." *Id.*

An attorney's claim for fees incurred in creating a fund is afforded priority over all other claims against the fund. *See Ries v. National R.R. Passenger Corp.*, No. 89-51, 1993 WL 131490, at *2 (E.D. Pa. Apr. 27, 1993) ("[E]quitable considerations support the satisfaction of an attorney's lien for fees prior to the recognition of other competing claims because the attorney's efforts created the fund from which other parties seek to benefit."); *United States v. Commonwealth of Pa., Dep't of Highways*, 349 F. Supp. 1370, 1393 (E.D. Pa. 1972) ("[U]nder Pennsylvania law, as between the charging lien . . . and the security interest . . . [the charging] lien is superior on the fund which [the firm's] services secured . . ."); *Appeal of Harris*, 186 A. at 97 (attorney charging lien has priority over mortgagee because "lien creditor must yield his claim to the attorney's reasonable claim for

compensation"); *Patten v. Wilson*, 34 Pa. 298, 300   (Pa. 1859) ("equitable assignment" of money judgment to lawyer as payment for legal services "defeats" claims of creditors); *Ambeliotis v. Ambeliotis*, No. 229 WDA 2016, 2016 WL 5842167, at *8 (Pa. Super. Aug. 31, 2016) ("Under Pennsylvania law, an attorney's equitable charging lien is superior to that of other creditors.") (non-precedential); *Almi, Inc. v. Dick Corp.*, 375 A.2d 1343, 1350 (Pa. Cmwlth. 1977) (attorney charging lien "is entitled to priority" over judgment creditor and lien holder).

Based on the September 25, 2023 Order recognizing F&C's charging lien, and Mr. O'Neill's subsequent admission that the $80,000 in Bochetto & Lentz's escrow account belongs to F&C to satisfy its lien, the Stipulated Order properly directed distribution of the funds to F&C.

Bochetto & Lentz cites no authority which subordinates an attorney's charging lien to the claim of any other creditor.  It relies exclusively on *Shenango Sys. Sols., Inc. v. Micros-Systems, Inc.*, 887 A.2d 772 (Pa. Super. 2005), which it claims supports the proposition that a judgment creditor has priority over an attorney asserting a charging lien, ECF 51-2 at pp.7-8, but that is not the holding in that case.

*Shenango Systems Solutions* involved a series of competing awards between parties to a dealership agreement.  887 A.2d at 772-73.  Micros obtained a judgment against Shenango for $331,006 and Shenango obtained an arbitration award against Micros for $198,677, which included an $82,456 award of counsel fees under a fee-

shifting provision in the parties' contract. *Id.* Shenango sought to enforce the arbitration award and its counsel sought leave to intervene to obtain recognition of a charging lien based on the attorney's fee award. *Id.* at 773. Micros defended by claiming that it satisfied all obligations owed to Shenango by way of set-off because its judgment exceeded the amount of the arbitration and attorney's fee awards. *Id.* The Superior Court agreed, finding that, "[a]fter application of the appropriate set-off there was no fund left available for distribution." *Id.* at 775. Contrary to Bochetto & Lentz's argument, ECF 51-2 at 7, the Superior Court did not recognize a charging lien, but rather "questioned how a charging lien can exist" without an agreement that counsel will look to a fund rather than the client for compensation. *Id.* The decision has no application here and certainly does not change the longstanding precedent holding that a charging lien has priority over all other claims to a fund created through the lawyer's efforts.

Moreover, the attachments to Bochetto & Lentz's motion make plain that Bochetto & Lentz took possession of the settlement funds knowing they were subject to a fee dispute. In the email exchange on October 16, 2023—just days after Mr. O'Neill acknowledged to Judge Sitarski that F&C is owed $80,000 out of the settlement proceeds to satisfy its charging lien, *see* Brier Decl.¶ 7 & Ex. D—Mr. O'Neill referenced the "letters" to the Court and the then-extant dispute over the fee owed to F&C. He wrote at 10:45 am on October 16: "I have the funds and can wire

immediately once either the judge responds to our letters of last week or I'm given an update [sic] 'disputed' amount to the fees."   ECF 51-7 at p.2.   Mr. Lentz responded just three minutes later at 10:48 am: "Let's do this, I will hold the 80- K in escrow until you get the permission from the judge.  I agree not to transfer it until you send me proof that the court has authorized the distribution." ECF 51-7 at p.1. Mr. O'Neill wrote back at 10:59 am: "I'd be happy to do that.  As long as I can maintain it [sic] the Court, if asked, that it's being maintained in an IOLTA escrow fund that should be fine."   *Id.*   Mr. Lentz replied at 11:02 am:   "Yes, I am now confirming in this email that I will hold it in our IOLTA account until the court releases it. . . ."  *Id.*   Having taken possession of the funds subject to the fee dispute and with the understanding that the funds would be distributed as directed by the Court, Bochetto & Lentz cannot mount a credible challenge to the Stipulated Order.

There was no mistake or new evidence and no grounds for reconsideration of the Stipulated Order.   The funds should be distributed to F&C forthwith in accordance with the Stipulated Order.

## **CONCLUSION**

For the reasons above, Bochetto & Lentz's motion to intervene and for reconsideration should be denied and the funds in Bochetto & Lentz's escrow account should be distributed forthwith to F&C pursuant to the Stipulated Order.

Respectfully submitted:

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Attorneys for Intervenor,
Fellerman & Ciarimboli Law, PC

Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Date:  May 30, 2024

## <u>CERTIFICATE OF SERVICE</u>

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing

Brief in Opposition was served upon the following counsel of record via the Court's

ECF system on this 30th day of May, 2023:

Michael J. O'Neill, Esquire
1002 Garrett Mill Road
Newton Square, PA  19073

Colleen B. Maslowski, Esquire
Daniel M. Brown, Esquire
Leticia J. Santiago, Esquire
The Law Offices of William J. Ferren & Associates
P.O. Box 2903
Hartford CT  06104

Gavin P. Lentz. Esquire
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA 19102

/s/ Donna A. Walsh
Donna A. Walsh
