IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGELINA KHARCHENKO,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | **No. 22-CV-01421** |
| | : | |
| **WT RAND TRANSPORT, LLC and** | : | |
| **WT RAND LOGISTICS, LLC,** | : | |
| Defendants. | : | |

## MEMORANDUM

**SITARSKI, M.J.**                                                                                                     **November 25, 2024**

Presently before the Court is Bochetto & Lentz, P.C.'s (B&L) motion to intervene and for reconsideration of the stipulated order dated April 30, 2024. (Mot. to Intervene, ECF No. 51). This case was referred to me after consent by the parties. (Order, ECF No. 38). For the reasons set forth below, B&L's motion is DENIED.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, represented by Fellerman & Ciarimboli Law, P.C. (F&C), brought this case on March 23, 2022, asserting personal injury claims. (Compl., ECF No. 1-1, at ¶ 44). Plaintiff later chose to discharge F&C, and it accordingly withdrew its representation on February 27, 2023. (Mot. to Withdraw, ECF No. 23, at ¶ 5; Order, ECF No. 24). On that same day, Michael O'Neill, Esquire, who had initially represented Plaintiff as an attorney for F&C but by this point had his own firm, submitted a notice of appearance for her. (Not. of App., ECF No. 25). Having previously entered into a Contingency Fee Agreement with Plaintiff, F&C moved to intervene for the limited purpose of asserting a charging lien on any proceeds from settlement or judgment in favor of Plaintiff. (Mot. to Intervene, ECF No. 28). This Court granted the motion on

September 25, 2023. (Order, ECF No. 43). The case was dismissed on October 10, 2023, following a reported settlement between the parties. (Dismissal, ECF No. 44).

Following the settlement, a disagreement arose among Plaintiff, O'Neill and F&C over the amount owed to F&C. An agreement was reached, and the Honorable Magistrate Judge Carol Sandra Moore Wells issued a stipulated order to satisfy F&C's lien on April 30, 2024. (Stip. Order, ECF No. 49). Plaintiff, O'Neill, and F&C agreed that the $80,000 that O'Neill had deposited with B&L was owed to F&C. (*Id.*; *see also* 3/22/24 Ltr., ECF No. 54-1, Ex. E). Judge Wells ordered that these funds be distributed to F&C within seven days. (Stip. Order, ECF No. 49).

B&L now seeks intervention and reconsideration of the April 30, 2024 order, asserting an interest in the $80,000 as an escrow agent. (Mot. to Intervene, ECF No. 51). B&L maintains that O'Neill deposited the funds to reduce the amount of a lien against him held by its client, Thrivest, LLC (Thrivest), pursuant to a June 1, 2023 judgment. (Memo. in Supp. of Mot. to Intervene, ECF No. 51-2, at 3, 6, 8). Based on O'Neill's alleged representations that the funds represented a portion of his attorney fee in this matter but that they could not be disbursed until it concluded, B&L agreed to hold them pending further direction from the court. (*Id.* at 3-4). F&C opposed B&L's motion on May 30, 2024. (Opp. Memo., ECF No. 54). On September 25, 2024, F&C filed a letter to Judge Wells regarding the United States Supreme Court's recent decision in *FDA v. Alliance for Hippocratic Medicine*, which held, *inter alia*, that doctors could not intervene on the basis of their patients' alleged injuries. 602 U.S. 367, 393, n.5 (2024).

## II.  LEGAL STANDARD

### A.  Intervention

B&L seeks intervention under Federal Rule of Civil Procedure 24(a) and (b). Under Rule

24(a)(2), a court must allow intervention when an applicant: (1) makes a timely motion; (2) has sufficient interest in the litigation; (3) demonstrates that the action "may impair or impede the movant's ability to protect its interest"; and (4) is not already adequately represented in the action.  F.R.C.P. 24(a).  Where the movant fails to first demonstrate a sufficient legal interest to be protected, no basis exists to "proceed to the impairment inquiry."  *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 227 (3d Cir. 2005) (citing *Brody v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992)).

      To show a sufficient interest, a movant must show that the interest either belongs to or is owned by the movant.  *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder*, 72 F.3d 361, 366 (3d Cir. 1995) (citing *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1185 (3d Cir. 1994)).  The interest must generally be more than economic, and "the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene."  *Id.*  Once a movant identifies a sufficient interest, it must show that the proceeding represents a "tangible threat" to the interest, not a merely incidental one.  *Brody*, 957 F.2d at 1122.  Finally, the movant must show "that representation of his interest may be inadequate," although "the burden of making that showing should be treated as minimal."  *Mountain Top Condo Ass'n*, 72 F.3d at 368 (quoting *Trbovich v. United Mine Workers*, 4040 U.S. 528, 538 n.10 (1972)) (internal quotation marks omitted).

      Rule 24(b)(2), in turn, permits intervention when a movant brings a timely "claim or defense that shares with the main action a common question of law or fact."  Permissive intervention is a "highly discretionary decision," *Liberty Mut.*, 419 F.3d at 227 (quoting *Brody*, 957 F.2d at 1115), but a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  F.R.C.P. 24(b)(3).

B.     **Reconsideration**

B&L seeks intervention to request reconsideration of the April 30, 2024 order under Rules 59(e) and 60(b)(1) and (2). Though Rules 59 and 60 "serve similar functions, each has a particular purpose." *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003). "A motion under Rule 59(e) is a device to relitigate the original issue decided by the district court, and used to allege legal error." *Id.* (internal quotation marks and citations omitted). Reconsideration under Rule 59(e) "is extremely limited" and requires: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available . . . ; or (3) the need to correct a clear error of law or fact to prevent manifest injustice." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). Rule 60(b)(1) permits reconsideration on grounds of "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b)(2) permits reconsideration when presented with "newly discoverable evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."

III.    **DISCUSSION**

A.     **Bochetto & Lentz, P.C. is Not a Proper Intervenor Under Rule 24(a)**

B&L claims, as "escrow agent" for the funds, a "direct interest in the April 30, 2024 Stipulated Order, which directs it to release such funds." (Memo. in Supp. of Mot. to Intervene, ECF No. 51-2, at 6). B&L posits that this money represents O'Neill's fee for services rendered in the instant litigation, and as such, its client, Thrivest, already holding a judgment against O'Neill before the accrual of F&C's charging lien, has the priority claim over the funds because its interest predates that of F&C. (*Id.* at 4-6, 8). B&L suggests that the funds should therefore be used to satisfy Thrivest's judgment rather than F&C's charging lien. (*Id.* (citing *Shenango Systems Solutions., Inc. v. Micros-Systems, Inc.*, 887 A.2d 772 (Pa. Super. Ct. 2005))).

4

F&C's response is twofold.  First, it argues that B&L is not an escrow agent but was instead holding the funds in an IOLTA (Interest on Lawyers' Trust Accounts) account in accordance with Pennsylvania Rule of Professional Conduct 1.15(f).[1]  (Opp. Memo, ECF No. 54, at 8).  However, it adds that the April 2024 order should control, whether or not the Court recognizes B&L as an escrow agent.  (*Id.*)  Second, F&C argues that B&L has not demonstrated a sufficient or priority interest over the funds.  (*Id.* at 9, 12).  It observes that any claimed interest by B&L is derivative of its client, Thrivest, and has lesser priority than F&C's charging lien.  (*Id.*).  F&C points to case law supporting the proposition that an attorney's charging lien takes priority over a creditor's judgment lien.  (*Id.* at 13).

The court finds that B&L is not a proper intervenor.  Its claim is derivative of Thrivest, and any interest as an escrow agent was addressed by the April 2024 order.  Further, the alleged judgment lien is against O'Neill, not the *Karchenko* settlement.  Therefore, F&C's lien, being directly against the settlement itself, takes priority over B&L's derivative judgment lien.

### 1.   **B&L Has Not Demonstrated a Sufficient Interest**

B&L is not a proper intervenor because it has not demonstrated a sufficient interest in the settlement funds under Rule 24(a). B&L asserts that it has an interest in the funds as an escrow agent acting on behalf of Thrivest and requests guidance as to its duties on that basis.  (Memo. in Supp. of Mot. to Intervene, ECF No. 51-2, at 6).  However, that guidance has already been provided via the April 2024 order, in which Judge Wells specifically directed B&L to "distribute[ ] [the funds] to [F&C] to satisfy its lien . . . within seven days . . . ."  (Stip. Order,

---

[1] This Rule provides: "When in possession of funds or property in which two or more persons, one of whom may be the lawyer, claim an interest, the funds or property shall be kept separate by the lawyer until the dispute is resolved.  The lawyer shall promptly distribute all portions of the funds or property, including Rule 1.15 Funds, as to which the interests are not in dispute." Pa. R.P.C. 1.15(f).

ECF No. 49, at 2). Moreover, in its earlier October 16, 2023 email to O'Neill, B&L attorney Gavin Lentz agreed that it would "hold [the money] in our IOLTA account until the court releases it." (10/16/23 Email, ECF No. 51-7). Nonetheless, despite Judge Wells's order, B&L continues to hold the funds.

Nor does B&L have any direct claim to the settlement funds. Instead, it seeks to intervene on *behalf* of the entity it claims has the interest, Thrivest. B&L is acting solely as the representative of Thrivest and has not claimed any interest that it "owns." *See Mountain Top*, 72 F.3d at 366 (citing *Alcan Aluminum*, 25 F.3d at 1185) ("This interest is recognized as one belonging to or being owned by the proposed intervenor."). Because B&L's only claimed interest is derivative of its client, it lacks a sufficient interest in the litigation, rendering intervention under Rule 24(a)(2) unavailable. *See Mountain Top Condo. Ass'n*, 72 F.3d at 366.

### 2. The Judgment Lien Cannot Be Levied Against the Settlement Funds

Even putting aside the derivative nature of the claim, B&L does not identify a sufficient interest in the funds. F&C holds a charging lien against them, whereas Thrivest's judgment lien is against O'Neill. B&L attempts to circumvent this problematic fact by arguing that the funds represent a portion of O'Neill's fee, pointing to an email thread between Lentz and him from October 2023 in which O'Neill agreed to deposit the funds with B&L. Although this action would be consistent with the funds constituting his fee in this matter, nowhere in the cited email thread did O'Neill actually confirm that the money was his. (10/16/23 Email, ECF No. 51-7). Instead, he referenced the "'disputed' amount to the fees," and both O'Neill and Lentz acknowledged that their disbursement remained subject to court authorization.[2] (*Id.*). This email

---

[2] Additional emails in the chain indicate that O'Neill placed the funds with B&L to forestall an upcoming deposition in the Thrivest litigation against him. (*See* 10/16/23 Email, ECF No. 51-7 (Lentz confirming to O'Neill that "we will cancel the deposition when you send the wire")).

6

exchange is not sufficient to establish that the funds belong to O'Neill.  B&L also includes a certification from Lentz alleging that O'Neill made representations to him that the funds represented his attorney's fee, but the certification relies on this same email thread.  (Lentz Cert., ECF No. 51-3, at 2 (citing 10/16/23 Email, ECF No. 51-7)).

On the contrary, whatever O'Neill's email may have implied or assumed, he has since explicitly disclaimed any interest in the funds.  He wrote the Honorable Karoline Mehalchick of the United States District Court for the Middle District of Pennsylvania, who assisted Judge Wells in resolving the dispute, to explicitly "confirm that [he] do[es] not have any interest in or claim to the $80,000.00 in funds placed in the escrow account of Bochetto & Lentz, P.C. as a result of the settlement of the *Kharchenko* case."  (3/22/24 Ltr., ECF No. 54-1, Ex. E). Accordingly, Judge Wells noted in the Stipulated Order that O'Neill had agreed that F&C was entitled to the full $80,000 on deposit pursuant to its charging lien.  (Stip. Order, ECF No. 49). Therefore, the Court concludes that the deposited funds do not represent O'Neill's fee, which also prevents the judgment lien from attaching to them.

### 3.     F&C's Charging Lien Has Priority Over Any B&L Judgment Lien

B&L relies heavily on *Shenango Systems Solutions* to argue that the judgment lien has priority over the charging lien, but this argument fails for two reasons.  (Memo. in Supp. of Mot. to Intervene, ECF No. 51-2, at 7-8).  Initially, it presumes that the funds are O'Neill's.  (*See id.* at 8 (arguing "upon information and belief" that "the Escrowed Funds do not constitute the entire settlement fund . . . but simply the attorney's fees due to O'Neill")).  However, as just discussed, the Court finds that the funds belong to F&C, consistent with O'Neill's unequivocal representations to Judge Mehalchick.  Second, the instant case is distinguishable from *Shenango*, where the Pennsylvania Superior Court exercised its equitable powers in holding that the appellee's arbitration award was subject to set-off against an earlier judgment obtained by the

7

appellant before the appellee's attorney's charging lien could attach to any remaining award. *Shenango*, 887 A.2d at 774. In so holding, the court explained: "While equity recognizes the validity of an attorney's charging lien to collect fees on a fund secured by the attorney's efforts on behalf of a client, the principles of equity also allow for a set-off under the inherent powers of the courts in the administration of justice." *Id.* (citing *Kisthardt v. Betts*, 321 Pa. 270, 183 A. 923 (1936)). Because the set-off against the prevailing party's adversary's earlier judgment meant that there were no funds "available for distribution," nothing existed to which the charging lien could attach. *Id.* (quoting *Almi, Inc. v. Dick Corp.*, 375 A.2d 1343, 1350 (1977)). Here, by contrast, the settlement proceeds were not subject to set-off by any judgment held by Plaintiff's litigation opponents (i.e., WT Rand Transport, LLC and WT Rand Logistics, LLC), and thus a fund was established to which F&C's charging lien could attach.

Because the $80,000 held by B&L represents the portion of *Kharchenko* settlement funds owed to F&C as compensation for its efforts in representing Plaintiff, its claim has priority over any B&L could lodge. It has long been the law of Pennsylvania that "if . . . the fund is realized solely through the efforts of the owner's attorney, who agrees to look to the fund for his compensation, the lien creditor must yield his claim to the attorney's reasonable claim for compensation . . . ." *Appeal of Harris*, 323 Pa. 124, 134 (1936). An attorney's charging lien over settlement proceeds enjoys priority because courts first seek to "satisfy[ ] the legal demands of the attorney by whose industry those fruits were obtained." *Id.* at 130–31; *see also Austin v. Thyssenkrupp Elevator Corps.*, 254 A.3d 760, 766 (Pa. Super. Ct. 2021) ("In *Appeal of Harris* . . . our Supreme Court broadened the scope of an attorney's charging lien . . . [and] held that the award, although not yet paid, constituted a fund, which was first subject to the attorney's claim.").

B&L attempts to distinguish *Harris*, which considered whether a charging lien or mortgage lien had superior priority, on the grounds that "[i]t did not concern the question of priority between [a] charging lien and a prior judgment lien," as in this case. (Memo. in Supp. of Mot. to Intervene, ECF No. 51-2, at 9). However, B&L fails to explain why a judgment would take priority over a charging lien when a mortgage does not, nor does it point the Court to any such case where this result has obtained, other than the distinguishable *Shenango* case involving a set-off between litigation adversaries. *Cf. Harris*, 323 Pa. at 134 (attorney's charging lien has priority even where the lien creditor has a superior claim to the funds than the attorney's client has). It also maintains that *Harris* merely "recognizes the existence of a charging lien," (Memo. in Supp. of Mot. to Intervene, ECF No. 51-2, at 9), but this reading ignores the above-quoted passages establishing that such lienholders have priority over "lien creditor[s]" who "must yield" to the superior claim of one whose efforts established the fund in the first place. *Harris*, 323 Pa. at 134. Because F&C's lien is over settlement funds which it helped to create, it has priority over any that B&L could assert.[3]

### B. Permissive Joinder Under Rule 24(b) Is Inappropriate Due to the Lack of Interest and the Potential for Undue Delay

The Court declines to grant permissive joinder under Rule 24(b) because B&L has an

---

[3] B&L speculates that "it is not clear" if F&C's lien is against the full settlement amount paid by Defendants or only "the attorneys' fees component to which Thrivest's judgment lien attached," which would have the effect of reducing or possibly eliminating the amount that "O'Neill's other creditors might be able to attach to their detriment." (Memo. in Supp. of Mot. to Intervene, ECF No. 51-2, at 9). In arguing that the judgment lien should have priority "to the extent equitable considerations factor in," it complains about not only F&C's "potential[ly] calculated move" but also the "lack of notice" to it and Thrivest. (*Id.*). However, B&L's speculation about how F&C went about procuring its judgment lien does not undo the clear directive of *Harris* and its progeny that charging lienholders have priority over judgment lienholders. *Harris*, 323 Pa. at 134; *Austin*, 254 A.3d at 766. Nor does B&L explain why it or Thrivest was entitled to notice of proceedings concerning the disbursement of proceeds that did not belong to them.

insufficient interest in the funds at issue. Intervention under Rule 24(b)(1)(B) requires a claim or defense by the movant before searching for a common question of law or fact. However, B&L's only interest is derivative of the interest of Thrivest, which also lacks a sufficient interest in this matter for the reasons set forth above. Further, B&L has asserted no common question of law or fact that applies to both the *Kharchenko* litigation and Thrivest's dispute with O'Neill. Instead, B&L's claim is merely an unrelated one against one of the attorneys who represented Plaintiff in the instant litigation. Accordingly, the Court exercises its discretion to deny B&L's application for permissive joinder. *See* F.R.C.P. 24(b)(3) (recognizing the court's "discretion" in whether or not to grant permissive joinder); *see also Liberty Mut.*, 419 F.3d at 227 (highlighting the "highly discretionary decision" of permissive joinder (quoting *Brody*, 957 F.2d at 1115)).

    **C.**     **Reconsideration Is Not Warranted**

        **1.**     **Rule 59(e)**

Rule 59(e) requires the movant to show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available . . . ; or (3) the need to correct a clear error of law or fact to prevent manifest injustice." *Blystone*, 664 F.3d at 415. There has been no change in law. Accordingly, to satisfy the test under this subsection, B&L must point to new evidence or an error resulting in manifest injustice.

    B&L argues that the funds in its account belong to O'Neill, thereby making them subject to Thrivest's judgment lien against him. However, it has presented the Court with no new evidence countering O'Neill's contrary representations to Judges Mehalchick or Judge Wells's findings based on those representations. (*See* Stip. Order, ECF No. 49; 3/22/24 Ltr., ECF No. 54-1, Ex. E). Instead, B&L simply states that "upon information and belief" the funds represent O'Neill's attorney's fee, relying on its email exchange with him. (Memo. in Supp. of Mot. to Intervene, ECF No. 51-2, at 8; Lentz Cert., ECF No. 51-3; 10/16/23 Email, ECF No. 51-7).

However, as discussed above, this evidence does not establish that the funds belong to O'Neill, particularly in light of his explicit disavowal of any claim to those proceeds. Moreover, it was not error for Judge Wells to find based on that disavowal that the funds "deposited in the Bochetto & Lentz, P.C. escrow account are the sole and exclusive property of Fellerman & Ciarimboli Law, P.C.," not that of O'Neill. (Stip. Order, ECF No. 49, at 2). Thus, reconsideration under Rule 59(e) is denied.

    **2. Rule 60(b)**

B&L also moves for reconsideration under Rule 60(b)(1) and (2). These subsections permit reconsideration for mistake, inadvertence, surprise, excusable neglect, and upon new evidence. However, as just discussed in conjunction with Rule 59(e), B&L has identified no mistake or new evidence. Further, insofar as its lack-of-notice arguments could be construed as an assertion of surprise, B&L (and Thrivest), who lacked a cognizable interest in the funds, was not entitled to notice. (*See supra* at 8 n.2). The remaining bases, inadvertence and excusable neglect, simply do not apply. Accordingly, the Court denies reconsideration under Rule 60(b) as well.

**IV. CONCLUSION**

For the foregoing reasons, Bochetto & Lentz, P.C.'s motion to intervene and for reconsideration of the stipulated order dated April 30, 2024 is denied.

An appropriate Order follows.

              BY THE COURT:

                /s/ Lynne A. Sitarski
              LYNNE A. SITARSKI
              United States Magistrate Judge